UNITED STATES v. 150 PACKAGES, etc.,
LABELED IN PART BUSH MULSO
TABLETS et al.

No. 4415.

United States District Court
E. D. Missouri, E. D.

July 11, 1947.

Arthur A. Hapke, Asst. U. S. Atty., of St. Louis, Mo., for plaintiff.

Paul M. Gerwitz, Jr., of St. Louis, Mo., for claimant David V. Bush.

Donald Gunn, of St. Louis, Mo., for intervenor National Dietary Food Ass'n.

MOORE, Chief Judge.

### Findings of Fact

1. That the Marshal of this District, pursuant to Libel of Information filed in this cause, did, on March 20, 1946, seize:

67 packages of "Bush Mulso Tablets,"
36 bottles of "Sulpho,"
60 packages of "Bush Endo-Veg,"
12 dozen packages of "Garlic-Parsley Tablets,"
8 dozen packages of "Bush Lemo Tabs,".

in the possession of David V. Bush at 2626 South Grand, St. Louis, Missouri, within the Eastern Division of Eastern Judicial District of Missouri.

2. That the Marshal of this District did, on March 20, 1946, serve a copy of the said libel on David V. Bush, 2626 South Grand, St. Louis, Missouri, in whose possession the articles seized were found.

3. That David V. Bush did file a verified claim of ownership to the articles seized in the cause herein.

4. That the claimant, David V. Bush, did file an Answer in the cause herein.

5. That all of the said articles seized in the cause herein were shipped in interstate commerce from the State of California to St. Louis, in the State of Missouri.

6. That David V. Bush was the packer and the distributor of the said articles of drug seized herein.

7. That all of said articles seized herein were intended for use in the cure, mitigation, treatment, or prevention of disease in man or intended to affect the structure or function of the body of man and are, therefore, articles of drug under the Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq.

8. That the label which appeared on the article of drug labeled in part "Bush Mulso Tablets," Libelant's Exhibit 1, was the label which appeared on each package of the said article of drug at the time that said drug, was shipped in interstate commerce from Los Angeles, California, to St. Louis, Missouri, via Railway Express Agency, on or about February 19, 1946, and at the time that the said article of drug was seized in the cause herein.

9. That the label on the individual packages of the article of drug labeled in part "Bush Mulso Tablets" contains the statement: "Directions: Three to six tablets after meals as required," and the further statement: "Provides the adsorbing properties of charcoal with the proteolytic enzymes or papain."

10. That there is no statement on the label of any disease or condition in man, or of the structure or other function of the body of man, informing the consumer when the directions "Three to six tablets after meals as required" are to be followed.

11. That the statement: "Provides the adsorbing properties of charcoal with the proteolytic enzymes of papain" and the statement of the contents of the said article of drug, which also appears on the said label, do not inform the consumer of the use of the article of drug in the diagnosis, cure, mitigation, treatment, or prevention of any disease in man or the effect of the said article of drug upon any structure or any function of the body of man, or of any other use for the said article of drug.

12. That the statement: "Directions: Three to six tablets after meals as requir-

ed," suggests to the consumer that the said article of drug is intended to be used in the diagnosis, cure, mitigation, treatment, or prevention of some disease in man, or to have an effect upon some structure or some function of the body of man, but standing without a further statement as to its intended use, is misleading.

13. That directions for use contained upon the label upon each package of the article of drug labeled in part "Bush Mulso Tablets," Libelant's Exhibit 1, are not adequate and do not inform the consumer of any use of the said drug.

14. The label is misleading in view of the representation: "Directions: Three to six tablets after meals as required," in that it does not contain any statement as to the disease or condition in man or of the effect on the structure or body function for which the directions "three to six tablets as required" are to be followed.

15. That the label, which appeared on the article of drug labeled in part "Sulpho," Libelant's Exhibit 2, was the label, which appeared on each package of the said article of drug, at the time that the drug was shipped in interstate commerce from Los Angeles, California, to St. Louis, Missouri, via Railway Express Agency on or about February 19, 1946, and at the time that the said article of drug was seized in the cause herein.

16. That the label on the individual bottles of the drug labeled in part "Sulpho" contains the statement "Sulphur Baths: Fill tub with water at desired temperature. Add 2 to 4 oz. sulpho and remain in tub 20 to 30 minutes as agreeable. Keep bath room well ventilated. Avoid getting in the eyes. (May bleach the hair.)" And the further statement "For use by those who delight in Sulphur Baths," and the further statement "A Concentrate of Sulphur Mineral Hot Springs Water consisting essentially of the Polysulphides and Sulphides of Calcium and Sodium."

17. That there is no statement on the label of any disease or condition in man or of the structure or other function of the body of man, for which the said article of drug is a cure, mitigation, treatment or prevention, so as to inform the consumer, when the directions contained on the label are to be followed.

18. That the statement "For use by those who delight in Sulphur Baths," and the statement of the contents of the said article do not inform the consumer of the use of the article of drug in the diagnosis, cure, mitigation or prevention of any disease in man or the effect of the said article of drug upon any structure or any function of the body of man or of other use for the said article of drug.

19. That the directions for use contained upon the label on each of the bottles of the said article of drug, labeled in part "Sulpho," Libelant's Exhibit No. 2, are not adequate directions for use as they do not inform the consumer of any use for the said article of drug.

20. That the label suggests to the consumer that the article of drug is intended to be used in the diagnosis, mitigation, treatment or prevention of said disease in man, or to have an effect upon some structure or some function of the body of man, but without a further statement as to its intended use, said label is misleading.

21. The label on the article of drug labeled in part "Sulpho," Libelant's Exhibit 2, is misleading and does not contain adequate directions for use in view of the representation "Sulphur Baths: Fill tub with water at desired temperature. Add 2 to 4 oz. Sulpho and remain in tub 20 to 30 minutes as agreeable. Keep bath room well ventilated. Avoid getting in the eyes. (May bleach the hair.)" and does not contain any statement as to the disease or condition in man or the effect on the structure of the body or any function of the body of man for which the directions are to be followed.

22. That the label, which appeared on the article of drug, labeled in part "Bush Endo-Veg," Libelant's Exhibit 3, was the label, which appeared on each of the said packages of the said article of drug at the time that the said article of drug was shipped in interstate commerce from Gardena, California to St. Louis, Missouri, via Railway Express Agency on or about February 25th, 1946, and at the time that the said article of drug was seized in the cause herein.

23. The label on the individual packages of the drug labeled in part "Bush Endo-Veg" contains the statement "Directions-Suggested Use: Two tablets with each meal. Swallow with water. Six tablets daily will provide 0.84 Mg. of iodine which is eight times the minimum daily adult and child's requirements," and the further statement "Ingredients—Each tablet contains Pacific Ocean Kelp as a source of iodine in a case of desiccated alfalfa and celery, with excipients. As a Dietary Kelp as a source of iodine in a case of desiccated alfalfa and celery, with excipients. As a Dietary Source of Iodine."

24. That there is no statement on the label of any disease or condition in man or of the structure or other function of the body of man, for which the said drug is a cure, mitigation, treatment or prevention except the statement "As a Dietary Source of Iodine" so as to inform the consumer when the directions "Two tablets with each meal. Swallow with water." are to be followed.

25. That the statement "As a Dietary Source of Iodine," together with the statement of the contents of the said article of drug, which appear on the label, do not inform the consumer of the use of said article of drug in the diagnosis, cure, mitigation, treatment or prevention of any disease in man or the effect of the said article of drug upon any structure or any function of the body of man, or show any other use for the said article of drug; that the statements on the said label suggest to the consumer that the said article of drug is intended to be used in the diagnosis, cure, mitigation, treatment or prevention of some disease in man or to have effect upon some structure or some function of the body of man, but standing without a further statement as to its intended use is not adequate directions for use and is misleading.

26. That the directions for use contained on the label of the said article of drug "Bush Endo-Veg," Libelant's Exhibit 3, do not inform the consumer of the use of the said drug and are therefore not adequate directions for use.

27. That the label is misleading, and does not contain adequate directions for use in view of the representation "Directions—Suggested Use: Two tablets with each meal. * * *" in that it does not contain any statement as to the disease or condition in man or the effect on the structure or body functions, for which the directions "Two tablets with each meal" are to be followed.

28. That the said label, which appeared on the article of drug, labeled in part, "Garlic-Parsley Tablets," Libelant's Exhibit 4, was the label, which appeared on each package of the said article of drug at the time that the said article was shipped in interstate commerce from Gardena, California, to St. Louis, Missouri, via Railway Express Agency, on or about February 25, 1946, and at the time that the said article of drug was seized in the cause herein.

29. That the label on the individual packages of the article of drug labeled in part "Garlic-Parsley Tablets," Libelant's Exhibit 4, contains the statement "Each Tablet contains 3 grains of dehydrated Garlic and 3 grains of dehydrated Parsley with sugar, vegetable gums and artificial color as Tablet binders and coating. Suggested Use: For those persons wishing to include garlic and parsley in the regular diet, two of these tablets taken three times a day offers a convenient easy method. (No evidence of physiologic or therapeutic value)."

30. That there is no statement on the label of any disease or condition of man or of the structure or other functions of the body, for which the said article of drug is recommended as a diagnosis, cure, mitigation or treatment so as to inform the consumer when the directions "two of these tablets taken three times a day" are to be followed.

31. That the statement "For those persons wishing to include garlic and parsley in the regular diet" does not inform the consumer of the said article of drug in the diagnosis, cure, mitigation or prevention of any disease in man or the effect of the said article of drug upon any structure or any function of the body of man or of any other use for the said article of drug.

32. That as the said article is an article of drug, the said statement "No evidence

of physiologic or therapeutic value," which may have been intended by the shipper to avoid the effect of the Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., only gives the consumer information that the said article has no use rather than states its intended use.

33. That the statement of "Suggested Use" suggests to the consumer that the said article of drug is intended to be used in the diagnosis, cure, mitigation, treatment or prevention of some disease in man or to have an effect upon some structure or some function of the body of man, but standing without further statement as to its intended use is not adequate directions for use and is misleading.

34. That the directions for use contained on the label upon each package of the article labeled in part "Garlic-Parsley Tablets," Libelant's Exhibit 4, do not inform the consumer of the use of said drug and therefore are not adequate directions for use.

35. That the label is misleading and does not contain adequate directions for use in view of the representation "Suggested Use: For those persons wishing to include garlic and parsley in the regular diet, two of these tablets taken three times a day, offers a convenient easy method," in that it does not contain any statement as to the disease or condition in man or the effect upon the structure or any function of the body of man for which the said article of drug is a diagnosis, cure, mitigation or treatment, and for which two of these tablets three times a day are to be followed.

36. That the said label, which appeared on the article of drug "Bush Lemo Tabs", Libelant's Exhibit 5, was the label, which appeared on each package of the article of drug at the time that said article of drug was shipped in interstate commerce from Gardena, California, to St. Louis, Missouri, via Railway Express Agency on or about February 25, 1946, and at the time that the said article of drug was seized in the cause herein; that the label on the individual packages of the article of drug labeled in part "Bush Lemo Tabs" contains the statement "A Special Dietary Source of Vita-min C Suggested Use—One to two tablets daily. Tablets may be chewed or swallowed with water. Each tablet provides the adult with the minimum daily requirements of Vitamin C and the child with 1½ times the minimum requirements"; that there is no statement on the label of any disease or condition in man or the structure or other function of the body of man for which the said article of drug is a diagnosis, cure, mitigation or treatment, so as to inform the consumer when the directions "One to two tablets daily" are to be followed.

37. That the statement "A Special Dietary Source of Vitamin C" and "Each tablet provides the adult with the minimum daily requirements of Vitamin C and the child with 1½ times the minimum requirements" do not inform the consumer of the use of the said article of drug in the diagnosis, cure, mitigation, treatment or prevention of any disease in man, or the effect of the said article of drug upon any structure or any function of the body of man or any other use for the said article of drug.

38. That the statement "Suggested Use —One to two tablets daily" suggest to the consumer that the said article of drug is intended to be used in the diagnosis, cure, mitigation, treatment or prevention of any disease in man or to have an effect upon some structure or some function of the body of man, but standing without any further statement as to its intended use, the said label does not contain adequate directions for use and is misleading.

39. That the directions for use contained upon said label upon each package of the drug labeled in part "Bush Lemo Tabs," Libelant's Exhibit 5, do not inform the consumer of any use of the said drug and are therefore inadequate directions for use.

40. That the label does not contain adequate directions for use and is misleading in view of the representation "Suggested Use—One to two tablets daily," and that the said label does not contain any statement of the disease or condition in man or the effect upon the structure or body function for which the directions "One to two tablets daily" are to be followed.

## Conclusions of Law

1. That each of the said articles of drug were introduced into and were shipped in interstate commerce from California to St. Louis, Missouri.

■ 2. That the said articles of drug, seized in the cause herein, were intended for use in the cure, mitigation, treatment or prevention of the disease in man, or intended to affect the structure or function of the body of man, and are therefore articles of drug under the Federal Food, Drug, and Cosmetic Act of 1938, as amended, 21 U.S.C.A. § 321(g).

■ 3. A drug is misbranded unless its labeling bears "adequate directions for use" 21 U.S.C.A. § 352(f).

■ 4. The requirement that the labeling bear "adequate directions for use" requires not only that the labeling bear statement of the dosage or the amount, which is recommended that the consumer use, but also a statement of the purpose, namely, the disease or the effect upon the structure or function of the body for which the article of drug is to be taken.

5. That directions for use are not adequate unless the purpose for which the drug is to be taken, as well as the amount to be taken, appear on the labeling.

■ 6. That the labels on the five articles of drug seized herein do not bear a statement of the disease or of the effect on the structure or function of the body of man, for which the said articles of drug are to be used, and therefore the labeling does not bear adequate directions for use.

7. That the labeling is misleading.

8. That the said articles of drug seized herein are misbranded.

9. That the said articles of drug seized herein are subject to forfeiture and condemnation to the United States.

10. Because of the facts heretofore found, libelant is entitled to a decree of condemnation and forfeiture.

■ 11. That the articles of drug seized herein were seized in the Eastern Judicial District, Eastern Division, of Missouri, and that the Court has jurisdiction over this cause by virtue of Section 334, Title 21 U.S.C.A.

■ 12. That as no showing has been made that the said articles of drug seized herein have any value or can be sold without violating the Federal Food, Drug, and Cosmetic Act, and any State or local law, the said articles of drug shall be destroyed by the United States Marshal.

13. Libelant is entitled to its costs herein.

14. Under the facts heretofore found and the law, it is not necessary to pass upon the validity of the regulation, 2.106a1, of the Administrator of the Food and Drug Administration, or to make any findings of fact as to the advertising disseminated by the claimant herein, or to determine the customary conditions of purchase and use of the said articles of drug.